DOOLEY v. HOLDEN et al.

(Supreme Court, Appellate Division, Third Department. June 28, 1900.)

DEEDS—EXECUTION—DURESS AND UNDUE INFLUENCE.

A wife owning real property executed a deed thereof to her husband on the day of her death. Shortly before her death she expressed a desire to will her property to her relatives, but her husband, in an angry and threatening manner, had told her that he must have his way about the

property, and drove from the house the man whom she had called to make the will. The husband had sent a man to the house twice to get her to make a deed of the property to him, and sent for a notary the day of her death, who told her, in the presence of her husband, that he had come to take her acknowledgment to the deed to her husband, and asked her if she wanted to sign it; and she said she did, and made her mark thereto. She had been daily growing weaker for two weeks prior to her death, and on the morning she signed the deed she was so weak that she did not appear to know her friends. *Held*, that the execution of the deed was not the voluntary act of the wife, but was procured by the undue influence of her husband, and was therefore void.

Appeal from judgment on report of referee.

Action by Martin Dooley against Margaret Holden, James Devine, and Daniel Fitzpatrick, to set aside a deed. From a judgment dismissing the complaint, entered on report of a referee, plaintiff appeals. Reversed.

Argued before PARKER, P. J., and MERWIN, SMITH, KELLOGG, and EDWARDS, JJ.

John E. Van Etten, for appellant.

Alvah S. Newcomb, for respondents.

PARKER, P. J. On May 16, 1891, Anestasia Connell owned a certain parcel of land in the county of Ulster. She conveyed it to her husband, Dennis Connell, by a deed dated May 15, 1891, but not signed, acknowledged, or delivered until the 16th. On the same day (the 16th), she died. On July 16, 1891, Dennis Connell executed and delivered a deed of the same premises to the defendant Margaret Holden, and he has since died. The plaintiff is one of the heirs at law of Anestasia Connell, and he brings this action to set aside the conveyance to the husband, on the ground that it was not her free and voluntary act, but was procured by duress and compulsion on his part, and executed while she was mentally incapable of performing such an act. The defendant Margaret Holden answered, claiming that the conveyance to the husband was a valid one, and that she is now the lawful owner of the property. The other defendants are merely in possession under her. The issues were referred to a referee, who has found in favor of the defendants, and from the judgment entered on his decision this appeal is taken.

From the evidence in this case, it is clear that two or three days before her death Mrs. Connell desired to make a will and leave her property to her relatives, but feared that her husband would prevent it. It is also clear that her apprehension in that particular was well founded, and that her husband did prevent her from making any will. She made the attempt, but her husband drove from the house the man for whom she had sent to draw it. Such, in substance, is the testimony of the priest, McKenna, and of Mr. Humphrey. I can discover nothing in the record to impeach either of these witnesses, or in any way discredit the evidence which they give. They are neither of them contradicted. On the contrary, they are, to some extent, corroborated by the witness Elizabeth Fitzpatrick, who says that, three or four days before she died, Mrs. Connell (speaking of David Griffin, who was at the house that day) told her that he "was there to get her to sign a

deed of the property to her husband, and that she would not do it for him." The priest also testified that, on the occasion when Mrs. Connell expressed her desire to will the property to "the Dooleys," her husband soon after came into the room, looked fiercely at his wife, raised his finger, and said, "I must have my way in this matter,—in the matter of the property;" that the tone of his voice was loud and angry. David Griffin, it seems, drew the deed in question some three days before Mrs. Connell died. On the day of her death (the 16th), as the witness Everett, who was a notary public, testified, he took the deed from the husband, went to Mrs. Connell, who was then sick in bed, and told her he was there for the purpose of asking her to acknowledge a deed of the property from her to her husband. That the husband was present at the time. That she replied that she expected him; that Griffin had been there the day before, and advised her to send for him. That he asked her if she wanted to sign and acknowledge the deed, and she said she did. He got pen and ink and went to the bed, and she made her mark and acknowledged it. Witness did this at the request of the husband, who went after him and got him to come to the house for that purpose. He went to the house about 10 o'clock in the morning. As to her mental condition at that time Mrs. Fitzpatrick testified that she was at the house that morning and saw Mrs. Connell. She says: "I did not attempt to speak to her, she was so weak. She did not appear to know me." From the evidence of this witness, it appears that Mrs. Connell had been ill a month or more, and confined to her bed some two weeks; that she grew constantly weaker from the time she took to her bed. The witness says that "the day before she died she made a motion as if to speak, but I could not understand what it was." This witness is not in any way impeached or discredited. Her evidence is not contradicted, except so far as the statement of the witness Everett is contradictory of it.

Such is the substance of the evidence on both sides of the case. Can it be doubted that Mrs. Connell, if she intelligently signed that deed, did so through fear of her husband, and because of his violent insistence that she do so? Can we believe, under the circumstances as they appear from this evidence, that it was her free and voluntary act? I think not. The witness Everett does not attempt to describe her condition at all. It may be that all he states was literally true, and yet, with the eye of her husband upon her, in her weak and dying condition, she could no longer resist his will. She had resisted two days before, when Griffin presented the deed. At this stage, however, she was so near dead that she could not resist. Moreover, assuming that the witnesses have correctly stated what had previously passed concerning this deed, it is much more probable that Mrs. Connell did not talk quite so easily and intelligently about expecting the witness Everett and wishing to execute the deed as his evidence seems to indicate. Mrs. Fitzpatrick's statement that she could hardly speak and was practically insensible is probably true. The deed was procured by asking questions and accepting silence for assent, and her mark was made by the hand that guided hers. I am not unmindful of the fact that the husband claimed that the property in fact was his, but

there is not a particle of proof that he had the worth of a dollar or a day's work in it. On the record it clearly appears to have been hers, and the law recognizes Mrs. Connell's absolute right to dispose of it as she pleased. It was her plain desire to give it to "the Dooleys," of whom this plaintiff is one. Her husband not only prevented that, substantially by force, but also practically compelled her to convey it to him. He within two months conveyed it to his sister, the defendant Margaret Holden. She was living in the family at the time of Mrs. Connell's death, and continued to live with her brother afterwards. She does not claim that she was a purchaser for value from him. She made no attempt to prove it. On this record, she has no greater equity in the property than this plaintiff. The clear preponderance of evidence is to the effect that the deed was procured by the undue influence and compulsion of the husband. It clearly was not her voluntary act, and this plaintiff, as one of her heirs at law, is entitled to have it declared void as to him.

The judgment should be reversed, the referee discharged, and a new trial granted; costs to abide the event. All concur.